NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

DEC 06 2016

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JEANA BERNICE RAWA, | No. 14-17154 |
| Plaintiff-Appellant, | D.C. No. 2:13-cv-01318-ROS |
| v. | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, District Judge, Presiding

Argued and Submitted November 15, 2016
San Francisco, California

Before: SCHROEDER, REINHARDT, and OWENS, Circuit Judges.[1]

Jeana Rawa appeals from the district court's judgment affirming the

Commissioner of Social Security's denial of her application for disability

insurance benefits. The administrative law judge ("ALJ") found that Rawa was not

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[1] Judge Owens only joins Part I of this disposition.

disabled because she had the residual functional capacity ("RFC") to perform her past relevant work. We review the district court's decision de novo and will uphold the Social Security Administration's disability determination "unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

**I.**     We conclude that the ALJ erred in finding that Rawa was less than credible, and therefore rejecting her testimony regarding her severe and chronic pain. If, as in this case, "there is no evidence of malingering," an ALJ may reject a claimant's pain testimony only for "specific, clear and convincing reasons." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

First, the ALJ erred in concluding that Rawa's activities of daily living were inconsistent with her claims of debilitating pain and muscle weakness. The ALJ found that "some of the physical and mental abilities" needed to complete Rawa's activities were "the same as those necessary for obtaining and maintaining employment," and therefore belied her claims of incapacitating pain and disability. Yet this conclusion is contradicted by a review of Rawa's symptom testimony and function reports. Rawa's daily activities, as she described them, were in fact

2

consistent with her statements regarding the impairments caused by her pain and other symptoms.

In concluding that Rawa was less than credible, the ALJ repeatedly mischaracterized Rawa's level of daily activity. According to the ALJ, Rawa's testimony and function reports contradicted her claims of debilitating pain because she "admitted that she had a driver['s] license and was able to drive her son to school," "admitted that she was able to care for her own personal hygiene," was able to participate in "helping prepare dinner," "help with basic household chores and grocery shop," admitted that she "used a computer daily, visited with family, and watched television," and "admitted she could lift 30 pounds." An examination of the record shows that the ALJ omitted a number of salient and dispositive facts and details when recounting Rawa's activity level.

For example, the ALJ stated that Rawa admitted that she could drive her son to school, but failed to mention that Rawa drove only a few times a week, and that the school was "right around the corner." The ALJ stated that Rawa admitted that she could care for her own personal hygiene, but failed to mention that Rawa could no longer shave her legs due to pain, that she had difficulty sitting on the toilet, and trouble putting on socks and shoes. The ALJ stated that Rawa admitted that she could "help with basic household chores," but failed to mention that Rawa had to

3

fold laundry lying down because of her pain, and could prepare only meals that did not require her to stand for longer than 20 minutes. Finally, the ALJ stated that Rawa admitted that she "used a computer daily," but failed to mention that Rawa said expressly that she used a computer only when lying on the couch. More generally, the ALJ failed to recognize that Rawa stated repeatedly that she could not stand for longer than 20 minutes, could not sit comfortably for longer than 25 minutes, and that she spent seven out of eight hours a day lying down. Such an inaccurate representation of the record can not constitute a specific, clear, and convincing reason for rejecting Rawa's testimony regarding her pain and weakness.

In addition to ignoring critical and dispositive aspects of Rawa's activity level and function reports, the ALJ also erred when he failed to specify which of Rawa's activities were inconsistent with her symptom testimony and a finding of disability. The ALJ's general statement that "some" of Rawa's physical and mental abilities were inconsistent with her claims is not a sufficient basis upon which to reject her testimony regarding her pain. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (holding that "[g]eneral findings are insufficient" to determine that a claimant is less than credible)(internal quotation marks omitted). Our circuit has "repeatedly warned that ALJs must be especially cautious in

4

concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (noting that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Such caution is called for in this case. There is no indication that the limited activities Rawa engaged in comprised a "substantial" portion of her day, or were "transferrable" to a work environment. *See Ghanim*, 763 F.3d at 1165. We do not accept the premise that driving around the corner, using a computer only while lying down, being able to stand for 20 minutes to feed one's family, and struggling to put on one's shoes are consistent with being able to function at a level necessary for "obtaining and maintaining employment." It was therefore error for the ALJ to conclude that Rawa's daily activities were inconsistent with her testimony regarding her debilitating pain and muscle weakness.

Second, the ALJ rejected Rawa's pain testimony on the ground that her treatment had been "essentially routine and conservative" in nature. The ALJ found that because Rawa had not pursued "more aggressive treatment or additional

5

surgical intervention," her pain and other symptoms were not as severe as she alleged. As with the ALJ's conclusion regarding Rawa's daily activities, this finding is also contradicted by the record and is in conflict with our controlling case law. Contrary to the ALJ's characterization of Rawa's treatment as "conservative," Rawa underwent extensive testing after her alleged disability onset date, some of which involved having injections in her spine and metal needles placed into her legs. She received multiple epidural steroid injections, and was prescribed a series of pain medications. Such procedures and treatments are neither routine nor conservative. *See, e.g.*, *Garrison*, 759 F. 3d at 1015 n.20. Additionally, there is no evidence in the record that Rawa declined other, recommended treatments. Rawa's treating physician agreed that her desire to avoid further surgery was reasonable, and told her that he could not guarantee that future procedures would not cause her even greater pain. A conservative course of treatment is "not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Because it is contrary to the record and to the medical opinion of Rawa's treating physicians, the ALJ's finding regarding her course of treatment is not a specific, clear, and convincing reason for rejecting Rawa's testimony.

Finally, the ALJ rejected Rawa's testimony regarding her debilitating pain because she did not show signs of muscle atrophy in her spine. Without citing any medical finding or opinion in the record, the ALJ opined that "muscle atrophy is a common side effect of prolonged and/or chronic pain," and concluded that Rawa's pain testimony was less than credible because she did not exhibit such atrophy. It is beyond the scope of the ALJ's authority to offer such a medical opinion based solely on his own personal speculation. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) (stating that an ALJ may not rely on his "own speculative explanation"). Because none of the three reasons provided by the ALJ for finding Rawa less than credible is specific, clear, and convincing, and because each is contrary to our controlling case law, the ALJ erred in rejecting Rawa's pain testimony and in disregarding the impact of such symptoms on her ability to seek and maintain employment.

**II.**     Because the decision of the ALJ is marked by prejudicial legal error, we reverse. Further, we agree with Rawa that remand for an award of benefits is appropriate in this case. We remand to calculate and award benefits when (i) the record is fully developed and further administrative proceedings would serve no useful purpose, (ii) the ALJ had not provided legally sufficient reasons for rejecting the evidence, and (iii) if the improperly discredited evidence were

7

credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison*, 759 F. 3d at 1020. Each of these factors is met in this case.

On the first factor, the record in this case includes hundreds of pages of medical reports, Rawa's testimony before the ALJ, and assessments of her capacity to do work completed by two treating physicians. There is additionally vocational expert (VE) testimony directly addressing whether an individual with Rawa's alleged limitations would be able to sustain employment. Given this extensive record, this is not a case in which the admission of more evidence would be "enlightening." *Cf. Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014). As we have previously noted, remand for "the purpose of allowing the ALJ to have a mulligan" does not qualify as "useful purpose" for granting further administrative proceedings. *Garrison*, 759 F. 3d at 1022.

On the second factor, we have already discussed *supra* the ALJ's failure to provide legally sufficient reasons for discrediting Rawa's symptom testimony as to her severe, chronic pain and muscle weakness. We need not repeat that analysis here.

As to the third factor, if the improperly discredited evidence were credited as true, it is clear that the ALJ would be required to find Rawa disabled. The VE's testimony at hearing is clear, unopposed, and uncontradicted: if Rawa's symptom

testimony is credited as true, Rawa is disabled within the meaning of the Act. Such a finding by the VE is a sufficient basis upon which to remand for determination of benefits.

Under the credit-as-true rule, when an ALJ fails to provide legally sufficient reasons to support a finding of adverse credibility, this court will not "remand solely to allow the ALJ to make specific findings regarding that testimony. Rather, we will . . . take that testimony to be established as true." *Varney v. Sec'y of Health and Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988) (*Varney II*). As we held in *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007), a claimant's testimony *alone* may establish disability and an entitlement to benefits. *See also Moisa v. Barnhart*, 367 F.3d 882, 885-87 (9th Cir. 2004) (remanding for award of benefits when a claimant's symptom testimony was credited as true). In *Lingenfelter*, we remanded to award benefits when the claimant testified that he needed to lie down throughout the day due to his impairment, and the VE testified that such a limitation would prevent sustained work. 504 F.3d at 1033, 1041. Here, Rawa testified that, due to pain and muscle weakness, she needed to rest for seven hours out of an eight hour work day and to lie down frequently. At Rawa's hearing, the VE explicitly found that such a limitation would preclude employment. Thus, if

credited as true, Rawa's testimony regarding her severe pain and debilitating symptoms would require the ALJ to conclude that she was in fact disabled.

Finally, we exercise our discretion to grant benefits under the credit-as-true rule because this case is not one in which "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1105-06 (internal quotation marks omitted). The record in this case is not "uncertain and ambiguous," and there are no "outstanding issues that must be resolved" with respect to Rawa's symptom testimony. *Cf. Treichler*, 775 F.3d at 1106. Rather, a review of the record provides no evidence calling into doubt Rawa's credibility or honesty.

In light of the extensive medical record, the ALJ's error of law, the VE's testimony at hearing, and the lack of any reason to doubt Rawa's credibility, we conclude that it would be contrary to both controlling case law and the purposes of the Social Security Act to conduct further proceedings and to cause further extended delay. We find this issue dispositive of the appeal, and therefore do not address Rawa's additional claim that the Appeals Council and district court erred by rejecting the opinions of Dr. Aviles and Dr. Landsman. Because the evidence, when it is given the effect required by law, demonstrates that Rawa is unable to

seek and maintain employment, we **REVERSE** and **REMAND** for calculation and

award of appropriate benefits.