Mary A. THRESHER, Plaintiff—
Appellant,

v.

Michael J. ASTRUE, Commissioner of
Social Security, Defendant—
Appellee.

No. 07–35157.

United States Court of Appeals,
Ninth Circuit.

Submitted June 5, 2008.*

Filed June 19, 2008.

---

\* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

Michael C. Blanton, Elie Halpern, Elie Halpern & Associates, PS, Olympia, WA, Amy M. Gilbrough, Halpern & Oliver, PLLC, Seattle, WA, for Plaintiff–Appellant.

Nancy A. Mishalanie, SSA–Social Security Administration, Office of the General Counsel, Seattle, WA, for Defendant–Appellee.

Before: FERNANDEZ and CALLAHAN, Circuit Judges, and GONZALEZ,** District Judge.

### MEMORANDUM***

Mary A. Thresher appeals the district court's judgment which affirmed the Commissioner of Social Security's denial of Supplemental Security Income benefits. We reverse and remand.

■ (1) Thresher argues that the Administrative Law Judge who heard her case erred in making a decision at step 3 of the five-step process that must be followed in deciding this matter. *See* 20 C.F.R. § 404.1520(a)(4)(iii). As relevant here, pursuant to that section, if the claimant has impairments listed in Appendix 1,[1] the claimant is disabled without further inquiry.[2] Thresher argues that she meets the listing for mental retardation[3] because she falls within one of the four sets that comprise that listing.[4] The ALJ did not expressly discuss that set, but the evidence will support a determination that Thresher does come within the set because two of

---

** The Honorable Irma E. Gonzalez, Chief District Judge for the Southern District of California, sitting by designation.

*** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. 20 C.F.R. Pt. 404, subpt. P, app. 1.

2. *Id.* § 404.1520(a)(4)(iii).

3. *Id.* Pt. 404, subpt. P, app.1, § 12.05.

4. *Id.* § 12.05C ("Listing 12.05C.").

her IQ scores were in the 60 through 70 range,[5] that mental condition began before she was 22 years of age, and she does have an additional physical impairment. Listing 12.05C. Here the ALJ did suggest that Thresher was not functionally mentally retarded, but the ALJ's failure to reference § 12.05 and, in particular, Listing 12.05C makes it unclear whether the ALJ came to grips with the specific requirements of that section when she issued her decision. We do not doubt that an ALJ can decide that an IQ score is invalid.[6] The regulations' inclusion of the word "valid" in Listing 12.05C makes the ALJ's authority clear. But here, while the ALJ pointed to the level of Thresher's functioning, she did not find that the score was invalid, and the listing does not speak to functioning—it speaks only to the IQ score itself. Thus, we remand to the Commissioner for clarification regarding the nature of the considerations applied at step 3 and, particularly, precisely what was decided and why. *See Pinto v. Massanari,* 249 F.3d 840, 848 (9th Cir.2001); *see also Christner v. Astrue,* 498 F.3d 790, 794 (8th Cir.2007).

(2) Thresher next asserts that the ALJ erred by rejecting the evaluations of two examining psychologists. We disagree. As to one of the psychologists (Dr. Brown), the ALJ resolved a conflict and correctly relied on the evaluation of the other psychologist (Dr. Chalstrom) for specific and legitimate reasons. *See Lester v. Chater,* 81 F.3d 821, 830–31 (9th Cir.1996); *see also Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1195 (9th Cir.2004). Moreover, the ALJ did not reject Dr. Chalstrom's evaluation.

(3) Thresher also asserts that the ALJ erred in discounting Thresher's testimony and that of her witness, Randy Queen. However, the ALJ did give cogent and specific reasons[7] for discounting Thresher's pain testimony based upon her activities, her lackluster work history, and her failure to follow her doctor's treatment advice. *See Thomas v. Barnhart,* 278 F.3d 947, 958–59 (9th Cir.2002); *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir.2001); *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir.1996). There was no error. The ALJ did err regarding Queen because she, in effect, rejected his evidence simply because she rejected Thresher's own testimony. *See Dodrill v. Shalala,* 12 F.3d 915, 918–19 (9th Cir.1993); *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir.1987). Queen's personal observations should have been considered or, if rejected, some proper reason therefor should have been given.

(4) At step 5 of the five-step process, the ALJ must determine whether the

---

**5.** Here the doctor administering the IQ test (Dr. Chalstrom) specifically stated that the "test results were a valid reflection of [Thresher's] current level of intellectual functioning."

**6.** We have never decided what information is appropriately looked to in deciding validity. Some courts have said that the score can be questioned on the basis of "other evidence," but have not discussed exactly how other evidence impacts the validity of the score itself. *See, e.g., Clark v. Apfel,* 141 F.3d 1253, 1255–56 (8th Cir.1998); *Popp v. Heckler,* 779 F.2d 1497, 1499–1500 (11th Cir.1986) (per curiam). Other courts have been more explicit and have indicated that in questioning a score the ALJ must find some empirical link between the evidence and the score. *See Brown v. Sec'y of Health & Human Servs.,* 948 F.2d 268, 270 (6th Cir.1991); *see also Markle v. Barnhart,* 324 F.3d 182, 187 (3d Cir.2003) (activities of claimant were not inconsistent with scores); *Muse v. Sullivan,* 925 F.2d 785, 789–90 (5th Cir.1991) (per curiam) (test conditions suggested invalidity).

**7.** *See Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir.1999); *Bunnell v. Sullivan,* 947 F.2d 341, 345–46 (9th Cir.1991) (en banc).

claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v), (g). In making that determination, the Commissioner can use the grids if they apply,[8] but must call a vocational expert if they do not. *See Lounsburry v. Barnhart,* 468 F.3d 1111, 1114–15 (9th Cir.2006). The grids can be used by an ALJ when they *"completely and accurately* represent a claimant's [exertional] limitations." *Tackett v. Apfel,* 180 F.3d 1094, 1101 (9th Cir. 1999); *see also Heckler v. Campbell,* 461 U.S. 458, 461–62, 103 S.Ct. 1952, 1954–55, 76 L.Ed.2d 66 (1983). However, they do not apply when the claimant has non-exertional impairments that are sufficiently severe to significantly limit the range of work that the claimant can perform. *See Hoopai v. Astrue,* 499 F.3d 1071, 1075 (9th Cir.2007). There can be no doubt that Thresher's mental impairment is non-exertional. *See Bruton v. Massanari,* 268 F.3d 824, 828 (9th Cir.2001); *see also Holohan v. Massanari,* 246 F.3d 1195, 1208–09 (9th Cir.2001). Thresher's exertional limitations placed her in the category of light work, but her non-exertional limitations took away a major block of that work—at least all skilled work, which a mentally retarded person could not perform. Thus, at step 5 the ALJ should have obtained the advice of a vocational expert.[9]

REVERSED and REMANDED to the district court for further remand to the Commissioner.

---

**8.** Rules for Adjudicating Disability Claims in Which Vocational Factors Must Be Considered, 43 Fed.Reg. 55,349, 55,361 (Nov. 28, 1978).

**9.** We note that a part of the difficulty in not using an expert is shown by the struggle of the parties before us to explain what jobs Thresher could do based on the ALJ's bald statement that there is a significant number of jobs available.

