Jennifer CONLEY, Plaintiff,

v.

Carolyn W. COLVIN, Acting Commissioner of the Social Security Administration, Defendant.

Civ. No. 3:15–CV–02045

United States District Court,
D. Oregon.

Signed 03/06/2017

Filed 04/06/2017

Bruce W. Brewer, Law Offices of Bruce W. Brewer, PC, West Linn, OR, for Plaintiff.

Janice E. Hebert, U.S. Attorney's Office, Portland, OR, Leisa A. Wolf, Social Security Administration Office of General Counsel, Seattle, WA, for Defendant.

## OPINION AND ORDER

Michael McShane, United States District Judge

Plaintiff Jennifer Conley filed her application for disability insurance benefits and supplemental security income benefits on September 28, 2011. Tr. 13 [1] After a hearing, the administrative law judge (ALJ) issued a written decision finding Conley not disabled. Tr. 13–26.

Conley brings this action for judicial review of the Commissioner's decision denying her application for disability insurance benefits and supplemental security income

---

1. "Tr." refers to the Transcript of Social Security Administrative Record (# 10) provided by the Commissioner.

benefits. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Because the ALJ erred in failing to conclude Conley met the step three listing for intellectual disability, the ALJ's decision is REVERSED.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chafer*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's decision. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## DISCUSSION

The Social Security Administration utilizes a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. if the claimant satisfies her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id.*

At step three, the ALJ determined that Conley had severe impairments of a specific learning disorder, bipolar disorder, chronic back pain, and obesity. Tr. 15. However, the ALJ determined that these severe impairments did not meet one of the listed impairments in 20 C.F.R. § 404, subpt. P, app. 1. Tr. 16. Specifically, the ALJ determined Conley did not meet the criteria of listing 12.05. Tr. 17–18.

Listing 12.05 sets the standard for establishing an intellectual disability. It states that "[i]ntellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. 404 Subpart P, Appendix 1. In addition to establishing the first prong, a claimant must establish one of four requirements establishing the severity level of the intellectual disability. *See* 12.05(A–D). At issue here is 12.05C, which requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

The ALJ found that Conley did not meet listing 12.05C because Conley "does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation." Tr. 17. Further, the ALJ noted that Conley has higher adaptive functioning than her IQ score suggests because she has worked in the past, cares for her autistic daughter, and performs daily chores. Tr. 18. The Commissioner agues that the ALJ's conclusion was reasonable and supported by substantial evidence.[2] I disagree.

---

2. In briefing, the Commissioner did not explicitly discuss Conley's verbal IQ score of 70

or whether Conley had a physical or mental

## A. Valid IQ Score

■ An ALJ is free to reject a claimant's IQ score if it is invalid; however, the ALJ must explicitly reject the IQ score and have substantial evidence for doing so. *Stokes v. Astrue*, 2011 WL 285224 at *8-9, 2011 U.S. Dist. LEXIS 7154 at *25 (D. Or. Jan. 4, 2011). The Ninth Circuit has not specifically addressed what evidence an ALJ can rely on in rejecting an IQ score, but suggests that the ALJ can rely on improper testing conditions or activities that suggest a higher score. *Thresher v. Astrue*, 283 Fed.Appx. 473, 475 n.6 (9th Cir. 2008).

■ Here, the ALJ noted that Conley "has a verbal IQ score of 70, [but] her activities of daily living suggest that her adaptive functioning is much higher than her IQ score suggests." Tr. 18. The ALJ conflates the 12.05 introductory paragraph listing with the 12.05C IQ requirement, which makes it unclear whether he is arguing that Conley does not have deficits in adaptive functioning or that Conley's activities prove her IQ score invalid. This is not an explicit rejection of the validity of Conley's IQ score. *Stokes*, 2011 WL 285224 at *8, 2011 U.S. Dist. LEXIS 7154 at *24 (stating that an ALJ "improperly rejected [a claimant's] IQ scores because he never explicitly commented on their validity."). This position is bolstered by the fact that the Commissioner failed to present any arguments in briefing about the ALJ rejecting the validity of Conley's IQ score. In fact, the Commissioner only presented an argument about adaptive functioning in relation to Conley's IQ scores. Def's Reply 3–4, ECF No. 18. Since the ALJ failed to explicitly reject Conley's verbal comprehension score of 70, she satisfies the first requirement of 12.05C.

## B. Physical or Mental Impairment Imposing an Additional and Significant Work–Related Limitation

■ The ALJ found that Conley did not have a physical or mental impairment imposing an additional and significant work-related limitation under 12.05C. Tr. 17. This finding is erroneous as a matter of law. A finding of a severe impairment at step-two of an ALJ's sequential analysis is a per se finding of a physical or mental impairment imposing an additional and significant work-related limitation under 12.05C. *McGrew v. Colvin*, 2015 WL 1393291 at *5, 2015 U.S. Dist. LEXIS 37372 at *11 (D. Or. March 25, 2015). The ALJ found at step two of his sequential analysis that Conley has severe impairments of "specific learning disorder/other neurodevelopmental disorder, bipolar disorder, chronic back pain, and obesity." Tr. 15. Because of these findings by the ALJ, Conley meets the additional and significant work-related limitation requirement under 12.05C.

## C. Deficits in Adaptive Functioning

■ The Commissioner argues, and the ALJ found, that Conley cannot meet the introductory listing of 12.05. As noted, that section states that "Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in *adaptive functioning* initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. § 404 Subpart P, Appendix 1 (emphasis added). The Commissioner further argues that the ALJ's conclusion that Conley has a higher level of adaptive functioning than stated was reasonable and

impairment imposing an additional significant work-related limitation. *See* Def's Reply, ECF No. 18. Rather, the Commissioner focused on the introductory listing of 12.05. For

purposes of clarity, this Court will address the requirements of 12.05C along with the 12.05 introductory listing.

supported by substantial evidence. The substantial evidence cited by the Commissioner is the opinions of examining physicians, Tom Dooley and Luanne Ude. Dr. Ude and Dr. Dooley each stated that Conley has borderline intellectual functioning and can work in positions that require simple tasks and no academic training. Tr. 450, 653–654. Moreover, Dr. Dooley specifically stated that Conley would be a good candidate for vocational rehabilitation because of her significant work history. Tr. 450. Based on the previous opinions, the Commissioner argues that the ALJ's conclusion that Conley lacked deficits in adaptive functioning was supported by substantial evidence. However, the Commissioner's arguments misconstrue the nature of Conley's educational and vocational history. When viewed as a whole, the record compels the conclusion that Conley has demonstrated significantly subaverage intellectual functioning with deficits in adaptive functioning that manifested prior to age 22.

The introductory paragraph of 12.05 requires a claimant to demonstrate present deficits in adaptive functioning that manifested prior to the age of 22. *McGrew*, 2015 WL 1393291 at *6-7, 2015 U.S. Dist. LEXIS 37372 at *16; *Adkins v. Colvin*, 2016 U.S. Dist. LEXIS 140755 at *7 (D. Or. Jan. 26, 2016). Adaptive functioning is described as:

> How effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, socioeconomic background, and community setting.... Problems in adaptation are more likely to improve with remedial efforts than is the cognitive IQ, which tends to remain a more stable attribute.

*Pedro v. Astrue*, 849 F.Supp.2d 1006, 1011 n.1 (D. Or. 2001). Deficits in adaptive functioning can be shown through the use of circumstantial evidence. *Id.* at 1011–1012. Circumstantial evidence can include "attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low skilled work history." *Id.* at 1012 (quoting *Campbell v. Astrue*, 2011 WL 444783 at *5-6, 2011 U.S. Dist. LEXIS 13742 at *17 (E.D. Cal. Feb. 8, 2011)). In *Pedro*, the plaintiff was placed in special education classes, struggled to graduate high school, struggled with reading and writing, and had an extensive history of low skilled work. *Id.* at 1012. The court found that the plaintiff met listing 12.05C. *Id.* at 1014. In finding that the plaintiff met listing 12.05C, the Court emphasized that the ALJ's finding that plaintiff was not disabled because she was able to care for her children, live independently, and handle her own hygiene was erroneous. *Id.* Listing 12.05C does not require a finding that a plaintiff cannot perform basic daily activities. *Id.* (citing *Gomez v. Astrue*, 695 F.Supp.2d 1049, 1057 (C.D. Cal. 2010)).

Here, similar to the plaintiff in *Pedro*, Conley presented all the relevant circumstantial evidence that she suffered from deficits in adaptive functioning prior to the age of 22. At the hearing, Conley noted that she did not receive a high school diploma, was enrolled in special education classes, and had difficulty understanding school subjects. Tr. 41. These contentions by Conley are substantiated by her high school transcript, which shows poor grades and attendance at a secondary learning center starting during her sophomore year. Tr. 285. Moreover, the record is replete with findings by physicians that Conley suffers from limited academic skills, including a 4th grade reading level, 3rd grade spelling level, and a 5th grade math level. Tr. 450, 653–654. The ALJ stated that Conley's daily activities of being a single parent, performing household chores, and having low skilled work history

show that Conley does not suffer from deficits in adaptive functioning. Tr. 18. However, as was noted in *Pedro*, a plaintiff can perform daily activities and still meet listing 12.05C. As evidenced above, the record is clear that Conley suffered from deficits in adaptive functioning that manifested prior to the age of 22, even considering that she performs some daily activities.

■ Thus, the only issue remaining is whether the deficits in adaptive functioning that manifested prior to the age of 22 are currently present. *See McGrew*, 2015 WL 1393291 at *6-7, 2015 U.S. Dist. LEXIS 37372 at * 16 (requiring a claimant to show that deficits in adaptive functioning prior to the age of 22 are also currently present). The ALJ found that the deficits in adaptive functioning are not present because Conley is able to "care for her autistic daughter as a single parent, work part-time, and perform other activities of daily living such as household chores." Tr. 17–18. I disagree. Taken as a whole, the record amply demonstrates that Conley presently suffers from deficits in adaptive functioning that manifested prior to the age of 22.

On April 23, 2012, Dr. Tom Dooley completed a psycho diagnostic exam report on Conley. Dr. Dooley noted that Conley appeared "psychologically and socially unsophisticated" and presented with a "below average or borderline IQ, with difficulty thinking in abstract terms and questionable social judgment." Tr. 448, 450. In his summary, Dr. Dooley opined that Conley struggled in school and was only able to earn a certificate from a secondary learning center. Tr. 450. Dr. Dooley further diagnosed Ms. Conley with bipolar disorder, learning disorder, and a global assessment of functioning score of 57, which indicates Conley suffers moderate impairments in social, occupational, and school functioning. Tr. 450.

In February 2014, Dr. Anne Miner conducted a comprehensive psychological evaluation on Conley. Tr. 742. Dr. Miner administered the WAIS–IV, and Conley received a verbal comprehension score of 70. Tr. 744–745. The verbal comprehension score measures verbal concept formation, verbal reasoning, and knowledge one is able to gain from her environment. Tr. 745. Dr. Miner noted that "Ms. Conley's performance on this index reflects a significant impairment in functioning as compared to that of other indices and others in her peer group." Tr. 745. Dr. Miner further noted that Conley appeared confused at times during the evaluation and did not understand the nature of certain questions. Tr. 743. In her summary, Dr. Miner stated that Conley has a long history of learning difficulties that will impact her functioning in school and work settings. Tr. 747.

■ The ALJ afforded Dr. Miner's evaluation limited weight because Conley has been able to sustain full-time work, currently works part-time at Marshalls, and engages in daily activities that the ALJ felt contradicted Conley's impairment. Tr. 23. Disability claimants should not be penalized for attempting to lead normal lives despite their limitations. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Possessing work history or the ability to perform low-skilled, unsophisticated work and some daily chores does not compel a finding that a claimant lacks deficits in adaptive functioning. *See McGrew*, 2015 WL 1393291 at *7, 2015 U.S. Dist. LEXIS 37372 at *17. It must also be emphasized, that "the introductory paragraph of Listing 12.05 requires evidence that deficits in adaptive functioning exist, not evidence that a claimant has no adaptive functioning skills." *Id.* at *7, 2015 U.S. Dist. LEXIS

37372 at *18. Here, Conley is attempting to lead a normal life, but is limited by deficits in adaptive functioning. Conley's testimony reveals as much and the opinions of Dr. Miner and Dr. Dooley are in line with Conley's testimony, which undermines the ALJ's adverse credibility determination. Conley testified to an extensive low skilled work history, which both Dr. Miner and Dr. Dooley concluded Conley is capable of performing. Conley worked as a dietary aide at Providence Hospital, a cashier at the Dollar Tree, a clerk at Food for Less, a cashier at Taco Time, and an employee at Marshalls. Tr. 43–44. Although Conley's work history is extensive, it is all in relatively low-skilled positions where she struggles with tests and understanding instructions from her supervisors. Tr. 51. In fact, Conley was unable to advance at her position at McDonalds because she flunked the test to become a manager. Tr. 43. Currently, Conley is only working four hours per week at Marshalls. Tr. 44. Nothing in Conley's work history or testimony is inconsistent with Dr. Miner or Dr. Dooley's opinion. As noted above, the record indicates that, while Conley can perform some daily activities, she struggles adapting in work settings and is overwhelmed by her daily activities.

I conclude that Conley has met Listing 12.05. Therefore, Conley is "presumed unable to work and is awarded benefits without a determination whether [s]he actually can perform [her] own prior work or other work." *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990)). Because the record is complete and demonstrates Conley meets listing 12.05, this matter is remanded for an award of benefits. *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004).

## CONCLUSION

The Commissioner's decision is RE-VERESED. This matter is REMANDED for an award of benefits.

IT IS SO ORDERED.